# Exhibit A

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
06/05/2025
By: _____ Deputy
C. Raybould

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
402 W Broadway, Suite 1760
San Diego, CA 92101
Tel.:    (858) 209-6941
jnelson@milberg.com

*Attorneys for Plaintiff and*
*The Proposed Class*

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## SACRAMENTO COUNTY

| | |
|---|---|
| ROSANNE SCROGGINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD, P.C.,<br><br>Defendant. | **Case No.:**    25CV013376<br><br>**COMPLAINT – CLASS ACTION**<br><br>**FOR DAMAGES, INJUNCTIVE RELIEF, AND EQUITABLE RELIEF FOR:**<br><br>1. **NEGLIGENCE.**<br>2. **NEGLIGENCE *PER SE*.**<br>3. **BREACH OF IMPLIED CONTRACT.**<br>4. **UNJUST ENRICHMENT.**<br>5. **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW; and**<br>6. **VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT.**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Plaintiff Rosanne Scroggins ("Plaintiff"), on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Kronick, Moskovitz, Tiedemann & Girard, P.C. ("Defendant"). Plaintiff alleges the following upon information and belief based on and the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

2.      Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII"0F[1]) and Protected Health Information ("PHI", and collectively with "PII", "Private Information") that was impacted in a data breach that Defendant publicly disclosed in May 2025 (the "Data Breach" or the "Breach").

3.      Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information.

4.      Defendant is a Sacramento-based law firm that represents businesses, individuals, and institutions across the State of California.

5.      Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

6.      In August 2024, Defendant discovered unauthorized access to its IT Network from an unknown third-party.1F[2] In response, Defendant disconnected its systems, reset all user passwords, disabled access to all service accounts, and launched an investigation to determine the nature and scope of the Data Breach.2F[3]

7.      Defendant's investigation confirmed that the unknown third-party gained access to

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] Exhibit 1: Rosanne Scroggins Notice Letter.

[3] *Id.*

Defendant's IT Network and obtained data contained therein.[4] Defendant then conducted a review of the affected data to determine what types of Private Information were compromised and to whom they belonged.[5]

8.      Upon information and belief, the following types of Private Information were compromised in the Data Breach: name, Social Security number, date of birth, driver's license number, medical and health insurance information.[6]

9.      In late May 2025, Defendant issued a notice of public disclosure and began sending notice letters to individuals' impacted by the Data Breach.[7]

10.     Defendant failed to take precautions designed to keep individuals' Private Information secure.

11.     Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

12.     Defendant admits that information in its system was accessed by unauthorized individuals, though it provided little information regarding how the Data Breach occurred.

13.     The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

14.     Defendant failed to use reasonable security procedures and practice appropriate to the

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

3

nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

15.    As a result of Defendant's inadequate digital security and notice process, Plaintiff's and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

16.    Because of Defendant's failures, Plaintiff and the proposed Class Members have suffered a severe invasion of privacy and must now face a substantially increase in identity theft and fraud for years to come.

## PARTIES

17.    Plaintiff is a resident and citizen of Sacramento, California.

18.    Defendant is a professional corporation organized under the laws of the State of California, maintaining its principal place of business at 1331 Garden Highway, 2nd Floor, Sacramento, California, 95833.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this action under section 410.10 of the California Code of Civil Procedure and Article VI, section 10 of the California Constitution.

20.    This Court has personal jurisdiction over Defendant because it is headquartered in and has its principal place of business in California.

21.    Venue is proper in this Court under Code of Civil Procedure sections 395 and 395.5 because Defendant is headquartered in this county and a substantial part of the acts or omissions giving rise to this action occurred in this county.

4

## ADDITIONAL FACTUAL ALLEGATIONS

22.    The information held by Defendant in its computer systems at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

23.    Defendant made promises and representations to Plaintiff and Class Members that their Private Information would be kept safe and confidential, and that the privacy of that information would be maintained.

24.    Plaintiff's and Class Members' Private Information was provided to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

25.    Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep clients' Private Information safe and confidential.

26.    Defendant had obligations created by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA" or "FTC Act"), industry standards, and implicit representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

27.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

28.    Defendant collects and maintains significant Private Information.

29.    Defendant collects and maintains significant identifying information on its clients.

30.    Defendant uses this information to run its operations and to perform legal services to the individuals for whom it has collected information.

**Defendant's Data Breach Was Imminently Foreseeable**

31.    Defendant's data security obligations were particularly important given the substantial

5

increase in cyberattacks and/or data breaches targeting institutions that collect and store Private Information, like Defendant, preceding the date of the Data Breach.

32.     Data thieves regularly target institutions like Defendant due to the highly sensitive information in their custody. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

33.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.7F[8]

34.     As a custodian of P Private Information II, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members because of a breach.

35.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

36.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data in its systems, amounting to thousands of individuals detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

37.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

38.     The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

---

[8] *See* Identity Theft Res. Ctr., *2021 Data Breach Annual Report*, at 6 (Jan. 2022), https://notified.idtheftcenter.org/s.

**Value of Personally Identifiable Information**

39.     Identity theft is "a fraud committed or attempted using the identifying information of another person without authority."8F[9] "Identifying information" is "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."9F[10]

40.     The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.10F[11]

41.     The information compromised in the Data Breach is even more significant because it includes Social Security numbers, which is extraordinarily sensitive and private and is commonly used to perpetrate identity theft and financial and bank fraud.

42.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."11F[12]

43.     The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.

---

[9] 17 C.F.R. § 248.201 (2013).

[10] *Id.*

[11] Anita George, *Your Personal Data Is for Sale on The Dark Web. Here's How Much It Costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs.

[12] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.12F[13]

**Defendant Failed to Comply with FTC Guidelines**

44.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTCA, 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

45.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

46.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

47.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited

---

[13] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

by the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

48.    As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its data security practices, or to appropriately prepare to face a data breach and respond to it in a timely manner. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

49.    Defendant was at all times fully aware of its obligation to protect the PII of consumers under the FTC Act yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**Defendant Failed to Comply with Industry Standards.**

50.    Experts studying cybersecurity routinely identify institutions that store Private Information like Defendant as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

51.    Some industry best practices that should be implemented by institutions dealing with sensitive Private Information, like Defendant, include, but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, implementing reasonable systems to identify malicious activity, implementing reasonable governing policies, and limiting which employees can access sensitive data. As evidenced by the Data Breach and its timeline, Defendant failed to follow some or all these industry best practices.

52.    Other best cybersecurity practices that are standard at large institutions that store Private Information include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as

9

firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points.

53.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

54.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**Common Injuries & Damages**

55.     Because of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); and (d) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

**The Data Breach Increases Victims' Risk of Identity Theft and Fraud**

56.     Plaintiff and Class Members are at a heightened risk of identity theft for years to come, especially because Defendant's failures resulted in Plaintiff's and Class Members' Private Information falling into the hands of identity thieves.

57.     The unencrypted Private Information of Class Members has already or will end up for sale on the dark web because that is the *modus operandi* of hackers. Indeed, when these criminals do not post the data to the dark web, it is usually at least sold on private Telegram channels to even further identity

10

thieves who purchase the PII for the express purpose of conducting financial fraud and identity theft operations.

58.     Further, the standard operating procedure for cybercriminals is to use some data, like the PHI here, to access "fullz packages" of that person to gain access to the full suite of additional PHI that those cybercriminals have access through other means. Using this technique, identity thieves piece together full pictures of victim's information to perpetrate even more types of attacks.13F[14]

59.     With "Fullz" packages, cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

60.     The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

**Loss of Time to Mitigate Risk of Identity Theft and Fraud**

61.     Because of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation,

---

[14] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm and a Defendant arguing that the individual failed to mitigate damages.

62.      The need to spend time mitigating the risk of harm is especially important in cases like this where Plaintiff's and Class Members' Private Information is affected because such information is commonly used to commit identity theft and financial and bank fraud.

63.      By spending this time, data breach Plaintiff is not manufacturing her own harm but is taking necessary steps at Defendant's direction and because the Data Breach included her Private Information.

64.      Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience because of the Data Breach, such as contacting credit bureaus to place freezes on their accounts (which then requires a fee to unfreeze); changing passwords and re-securing their own computer networks; and checking their financial accounts and health insurance statements for any indication of fraudulent activity, which may take years to detect.

65.      These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."14F[15]

66.      These efforts are also consistent with the steps that FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.15F[16]

---

[15] *See* U.S. Gov't Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/new.items/d07737.pdf.
[16] *See* Fed. Trade Comm'n, *Identity Theft.gov*, https://www.identitytheft.gov/Steps.

**The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary**

67.    Based on the value of the information stolen, the data either has or will be sold to cybercriminals whose mission it is to perpetrate identity theft and fraud. Even if the data is not posted online, these data are ordinarily sold and transferred through private Telegram channels wherein thousands of cybercriminals participate in a market for such data so that they can misuse it and earn money from financial fraud and identity theft of data breach victims.

68.    Such fraud may go undetected for years; consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

69.    The retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of seven years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their PII.

**Plaintiff's Experience**

70.    Plaintiff is a client of Defendant.

71.    Plaintiff provided her Private Information to Defendant as a condition of obtaining services from Defendant.

72.    At the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

73.    Upon information and belief, and given the scope of the attack, Plaintiff's Private Information, including her Social Security number.

74.    Because of the Data Breach, Plaintiff has suffered a loss of time, interference, and inconvenience because of the Data Breach. Plaintiff has also experienced anxiety due to increased concerns for the loss of her privacy.

75.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in

the hands of the very people whose mission it is to use that data to steal Plaintiff's identity and to attempt financial fraud.

76.     Critically, the breach of this type of Private Information represents a brazen invasion of privacy, which is a harm long recognized in American courts.

## CLASS ALLEGATIONS

77.     Plaintiff brings this action under Code of Civil Procedure section 382 on behalf of herself, and on behalf of all members of the proposed classes defined as:

> All individuals residing in the United States whose Private Information was compromised in the Data Breach (the "Nationwide Class").

> All individuals residing in the State of California whose Private Information was compromised in the Data Breach (the "California Subclass").

78.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

79.     Plaintiff reserves the right to amend the definition of the proposed Class or to add a subclass before the Court determines whether certification is appropriate.

80.     Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, Plaintiff believes the proposed Class includes thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records.

81.     Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

- Whether Defendant engaged in the conduct alleged herein.

- Whether Defendant's conduct violated the FTC Act.

- When Defendant learned of the Data Breach.

- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach.

- Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations.

- Whether Defendant's data security systems, prior to and during the Data Breach, were consistent with industry standards.

- Whether Defendant owed duties to Class Members to safeguard her Private Information.

- Whether Defendant breached its duties to Class Members to safeguard her Private Information.

- Whether hackers obtained Class Members' Private Information via the Data Breach.

- Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members.

- Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members.

- Whether Defendant knew or should have known its data security systems and monitoring processes were deficient.

- What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct.

- Whether Defendant's conduct was negligent.

- Whether Defendant breached contracts it had with its clients, which were made expressly for the benefit of Plaintiff and Class Members.

- Whether Plaintiff and Class Members are entitled to damages.

- Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief, and among other things,

- Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

82.     <u>Typicality.</u> Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

83.     <u>Adequacy of Representation.</u> Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

84.     <u>Predominance.</u> Defendant has engaged in a common course of conduct toward Plaintiff and Class Members. For example, all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

85.     <u>Superiority.</u> A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class

16

1   action presents far fewer management difficulties, conserves judicial resources and the parties' resources,

2   and protects the rights of each Class Member.

3       86.    Class certification is also appropriate. Defendant has acted and/or refused to act on

4   grounds generally applicable to the Class such that final injunctive relief and/or corresponding

5   declaratory relief is appropriate as to the Class as a whole.

6

7       87.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access

8   to the names and addresses and/or email addresses of Class Members affected by the Data Breach.

9                                  **CLAIMS FOR RELIEF**

10                                      **COUNT I**
11                      **NEGLIGENCE AND NEGLIGENCE PER SE**
                        **(On Behalf of Plaintiff and the Nationwide Class)**
12
13      88.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above

14  in paragraphs 1 through 16 and paragraphs 22 through 76 as though fully set forth herein.

15      89.    Plaintiff and Class Members provided their non-public Private Information to Defendant

16  as a condition of obtaining services from Defendant.

17      90.    Defendant had full knowledge of the sensitivity of the Private Information and the types

18  of harm that Plaintiff and Class Members could and would suffer if the Private Information were

19  wrongfully disclosed.

20      91.    By assuming the responsibility to collect and store this data, Defendant had duties of care

21  to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the

22  information from theft.

23      92.    Moreover, Defendant's duty arose because the foreseeability of data breaches and the

24  harm inherently caused to data breach victims.

25      93.    Defendant had duties to employ reasonable security measures under Section 5 of the

26  FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as

27  interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect

28

confidential data.

94.     Defendant's duty to use reasonable security measures also arose under the common law, and as informed by the FTC Act, which mandates that Defendant implement reasonable cybersecurity measures.

95.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

96.     Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

97.     Defendant had and continues to have duties to adequately disclose that the Private Information of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

98.     Defendant breached its duties, pursuant to the FTC Act, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

- Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information.

- Allowing unauthorized access to Class Members' Private Information.

- Failing to remove Plaintiff's and Class Members' Private Information it was no longer required to retain pursuant to regulations; and

- Failing to implement a reasonable cybersecurity incident response plan that would have enabled Defendant to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so they could take appropriate steps to mitigate the potential for identity theft and other damages.

18

99.    Defendant's violation of the FTC Act also constitutes negligence *per se*, as those provisions are designed to protect individuals like Plaintiff and the proposed Class Members from the harms associated with data breaches.

100.    Defendant has admitted that the Private Information of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

101.    But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

102.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

103.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) experiencing an increase in spam calls, texts, and/or emails; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

104.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

105.    Additionally, as a direct and proximate result of Defendant's negligence and negligence

*per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

106.    Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

107.    Given Defendant's failures to implement the proper systems, as defined above, even knowing the ubiquity of the threat of data breaches, Defendant's decision not to invest enough resources in its cyber defenses amounts to gross negligence.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Nationwide Class)

108.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 16 and paragraphs 22 through 76 as though fully set forth herein.

109.    Plaintiff and the proposed Class Members transferred their Private Information to Defendant as a condition of obtaining services from Defendant.

110.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they provided Defendant with their Private Information. In exchange, Defendant should have provided adequate data security for Plaintiff and Class Members and implicitly agreed to do so.

111.    Defendant knew that Plaintiff and Class Members conferred a benefit on it in the form their Private Information as a necessary part of receiving services.

112.    Defendant, however, failed to secure Plaintiff and Class Members' Private Information and, therefore, did not provide adequate data security in return for the benefit Plaintiff and Class Members provided.

113.    If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have allowed it to be provided to Defendant.

114.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members

have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) experiencing an increase in spam calls, texts, and/or emails; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

115.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 16 and paragraphs 22 through 76 as though fully set forth herein.

116.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

117.    Plaintiff and Class Members conferred a benefit upon Defendant in the form of Private Information provided to Defendant in furtherance of obtaining legal services.

118.    Defendant appreciated or had knowledge of the benefits conferred upon them by Plaintiff and Class Members.

119.    Because of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between the value of services with reasonable data privacy and security practices and procedures, and the services without unreasonable data privacy and security practices and procedures that they received.

120.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class Members' monies paid and their Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the Class Members would not have provided their Private Information, nor paid Defendant, had they known

1  Defendant would not adequately protect their Private Information.

2    121.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff

3  and Class Members all unlawful or inequitable proceeds received by it because of their misconduct and

4  the Data Breach alleged herein.

5                                    **COUNT IV**
                                **INVASION OF PRIVACY**
6                    **(On Behalf of Plaintiff and the Nationwide Class)**

7    122.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above

8  in paragraphs 1 through 16 and paragraphs 22 through 76 as though fully set forth herein.

9
     123.    Plaintiff and Class members took reasonable and appropriate steps to keep their Private
10
   Information confidential from the public.
11
     124.    Plaintiff's and Class members' efforts to safeguard their own Private Information were
12
   successful, as their PII was not known to the public prior to the Data Breach.
13

14    125.    Plaintiff and Class members had a legitimate expectation of privacy to their Private

15  Information and were entitled to the protection of this information against disclosure to unauthorized

16  third parties.

17    126.    Defendant owed a duty to its clients, including Plaintiff and the proposed Class Members,

18  to keep their PII confidential.

19    127.    The unauthorized release of Private Information is highly offensive to any reasonable

20  person.

21    128.    Plaintiff's and Class members' Private Information is not of legitimate concern to the

22  public.

23    129.    Defendant knew or should have known that Plaintiff's and Class members' Private

24  Information was private.

25
     130.    It is likely that the Plaintiff's and the Class members' Private Information is rapidly
26
   becoming public knowledge as a result of the Data Breach.
27

28    131.    Moreover, because of the ubiquitous nature of data breaches, Defendant was substantially

                                         22

certain that a failure to protect Private Information would lead to its disclosure to unauthorized third parties, including the thousands of waiting identity thieves who are in a special relationship to Plaintiff and the proposed Class Members—in that those identity thieves are precisely the individuals whose aim it is to misuse such Private Information.

132.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Defendant's inadequate data security measures will likely result in additional data breaches. Plaintiff and Class members have no adequate remedy at law for the injuries that they will sustain in that a judgment for monetary damages will not prevent further invasions of the Plaintiff's and Class members' privacy by Defendant.

## COUNT V
## CALIFORNIA UNFAIR COMPETITION LAW
## Cal. Bus. & Prof. Code §§ 17200, et seq.
## (On Behalf of Plaintiff and the California Subclass)

133.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 16 and paragraphs 22 through 76 as though fully set forth herein.

134.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

135.    Defendant violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

136.    Defendant's "unfair" acts and practices include:

    a.    Defendant failed to implement and maintain reasonable security measures to protect Plaintiff's and Subclass Members' Private Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach.

    b.    Defendant failed to identify foreseeable security risks, remediate identified security risks, and sufficiently improve security following previous

cybersecurity incidents, as described herein. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and Subclass Members, whose Private Information has been compromised.

c. Defendant's failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code § 1798.81.5, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100.

137. Defendant failure to implement and maintain reasonable security measures also resulted in substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not have known of Defendant's inadequate security, consumers could not have reasonably avoided the harms that Defendant caused.

138. Defendant engaged in unlawful business practices by violating Cal. Civ. Code § 1798.82.

139. Defendant has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), the FTC Act, 15 U.S.C. § 45, and California common law.

140. Defendant's unlawful, unfair, and deceptive acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Class Member Private Information, which

was a direct and proximate cause of the Data Breach.

b. Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach.

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach.

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' Private Information, including by implementing and maintaining reasonable security measures.

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information including duties imposed by the FTC Act, 15 U.S.C. § 45; and

f. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Consumer Privacy Act, Cal. Civ. Code § 1798.100, California's Consumer Records Act, Cal. Civ. Code § 1798.80, et seq., and § 1798.81.5, which was a direct and proximate cause of the Data Breach.

141.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of individuals' Private Information.

142.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members were injured and suffered monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendant's services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

143.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair and unlawful business practices or use of their Private Information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**COUNT VI**
**CALIFORNIA CONSUMER RECORDS ACT**
**Cal. Civ. Code §§ 1798.80, et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

144.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 16 and paragraphs 22 through 76 as though fully set forth herein.

145.    [T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information [PII] from unauthorized access, destruction, use, modification, or disclosure."

146.    Defendant is a business that owns, maintains, and licenses personal information (or "PII"), within the meaning of Cal. Civ. Code §§ 1798.80(a) and 1798.81.5(b), about Plaintiff and Class Members.

147.    Businesses that own or license computerized data that includes PII are required to notify California residents when their PII has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of personal information [PII] that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

148.    Defendant is a business that owns or licenses computerized data that includes "personal information" [PII] as defined by Cal. Civ. Code § 1798.80.

149.    Plaintiff's and Class Members' PII includes "personal information" as covered by Cal. Civ. Code § 1798.82.

150.    Because Defendant reasonably believed that Plaintiff's and Class Members' PII was acquired by unauthorized persons during the Data Breach, Defendant had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

151.    Defendant failed to fully disclose material information about the Data Breach in a timely manner.

152.    By failing to disclose the Data Breach in a timely manner, Defendant violated Cal. Civ. Code § 1798.82.

153.    As a direct and proximate result of Defendant's violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff and Class Members suffered damages, as described above.

154.    Plaintiff and the Class Members seek relief under Cal. Civ. Code § 1798.84, including

actual damages and injunctive relief.

155.    Plaintiff and the Class Members were injured and have suffered damages, as described above, from Defendant's illegal and unauthorized disclosure and negligent release of their Private Information in violation of Cal. Civ. Code §§56.10 and 56.101, and therefore seek relief under Civ. Code §§ 56.35 and 56.36, which allows for actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorneys' fees, expenses and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class.

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members.

C.    For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

   i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein.

   ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws.

   iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information

28

when weighed against the privacy interests of Plaintiff and Class Members.

iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members.

v.    prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database.

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors.

vii.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring.

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures; requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems.

ix.   requiring Defendant to conduct regular database scanning and securing checks.

x.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members.

xi.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to

29

identify and contain a breach when it occurs and what to do in response to a breach.

xii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information.

xiii. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated.

xiv. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xv. for a period of 7 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment.

D. For an award of actual damages, compensatory damages, and nominal damages, in an amount to be determined, and for punitive damages, as allowable by law.

E. For an award of attorneys' fees and costs, and any other expenses, including expert witness fees.

F. Pre- and post-judgment interest on any amounts awarded; and

G. Such other and further relief as this court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.


Dated: June 5, 2025                    Respectfully submitted,

*/s/ John J. Nelson*
John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
402 W Broadway, Suite 1760
San Diego, CA 92101
Tel.: (858) 209-6941
jnelson@milberg.com

*Attorneys for Plaintiff and Proposed Class*

31

# Exhibit 1



KRONICK

Return Mail Processing
PO Box 589
Claysburg, PA 16625-0589

KRONICK
MOSKOVITZ
TIEDEMANN
& GIRARD

N4336-L05-0006402 P003 T00023 ********ALL FOR AADC 956
ROSANNE SCROGGINS

May 30, 2025

**Re: Notice of Data Breach**

Dear Rosanne,

Kronick Moskovitz Tiedemann & Girard ("Kronick"), a full-service law firm serving clients throughout California, was recently the target of a cybersecurity incident. Kronick is writing to inform you that the incident involved some of your personal information.

Kronick services organizations and individuals across a variety of industries, and in the course of its work on behalf of clients, is sometimes provided access to personal information as a part of the client engagement. Kronick receives and utilizes this data solely to provide legal counsel to its clients.

Kronick was in possession of your information due to its work for California Department of Corrections & Rehabilitation (CDCR). This notice explains the incident and steps we have taken in response, and provides additional information on steps you may take to help protect your information.

**What Happened**

In August 2024, Kronick discovered unauthorized access to its network from an unknown third party. Once we detected the incident, our team immediately disconnected systems, reset all user passwords, and disabled and reset all service accounts. After learning that the unknown third party claiming responsibility for the incident temporarily posted the data it took from the Kronick network to a website the unknown third party maintains outside the confines of the publicly accessible and indexed Internet, Kronick began an investigation and engaged leading third-party cybersecurity and forensic experts to assist. Kronick also notified law enforcement of the incident. The data is no longer posted on the dark web and, at this time, Kronick has no reason to believe this data was retained by the unknown third party or that any additional data was taken.

The investigation confirmed that the unknown third party gained access to certain Kronick internal systems and obtained data from those systems.  A thorough review of the affected data was conducted to identify what information was involved and to identify individuals to whom the data related.

**What Information Was Involved**

The review determined that the data involved may have contained some of your personal information, including your name, and one or more of the following: Social Security Number, date of birth, driver's license number, medical information, and health insurance information.

1331 Garden Hwy, 2nd Floor  |  Sacramento, CA 95833

www.kmtg.com

B146417

Exhibit B

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
John J. Nelson (SBN 317598) Milberg Coleman Bryson Phillips Grossman, PLLC, 402 W. Broadway, Suite 1760, San Diego, California 92101

TELEPHONE NO.: 858-209-6941    FAX NO. :
EMAIL ADDRESS:  jnelson@milberg.com
ATTORNEY FOR *(Name):*  Plaintiff, ROSANNE SCROGGINS

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
06/05/2025
By: _____ Deputy
C. Raybould

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SACRAMENTO
STREET ADDRESS: 720 9th St
MAILING ADDRESS: 720 9th St
CITY AND ZIP CODE:  Sacramento 95814
BRANCH NAME: Sacramento County Superior Court

CASE NAME:
Rosanne Scroggins vs. Kronick Moskovitz, Tiedemann and Girard P.C

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000)   [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 25CV013376<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[x] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2.  This case [x] is  [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a.  [ ] Large number of separately represented parties
    b.  [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
    c.  [x] Substantial amount of documentary evidence
    d.  [x] Large number of witnesses
    e.  [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    f.  [ ] Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4.  Number of causes of action *(specify):* 6 causes of action
5.  This case [x] is  [ ] is not   a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: June 5, 2025
John J. Nelson
_____
(TYPE OR PRINT NAME)

► *John J. Nelson*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
*   Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
*   File this cover sheet in addition to any cover sheet required by local court rule.
*   If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
*   Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

**SUM-100**

# SUMMONS
## *(CITATION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD, P.C.,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ROSANNE SCROGGINS, individually and on behalf of all others similarly situated

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
06/05/2025
By: _____ C. Raybould _____ Deputy

---

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* Sacramento Superior Court

720 9th St, Sacramento 95814

CASE NUMBER:
*(Número del Caso):*
25CV013376

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John J. Nelson, Milberg Coleman Bryson Phillips Grossman, 402 W. Broadway, Suite 1760, San Diego, CA 92101; (858) 209-6941

| DATE: *(Fecha)* 06/05/2025 | Clerk, by *(Secretario)* /s/ C. Raybould | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*



[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

---

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SACRAMENTO | Court Use Only |
|---|---|
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 9th Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>Rosanne Scroggins | |
| DEFENDANT/RESPONDENT:<br>KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD, P.C., | |

| **NOTICE OF CASE ASSIGNMENT<br>AND CASE MANAGEMENT CONFERENCE<br>(UNLIMITED CIVIL CASE)** | CASE NUMBER:<br>25CV013376 |
|---|---|

**THIS NOTICE SHALL BE SERVED BY PLAINTIFF'S COUNSEL ON ALL OTHER PARTIES. ANY PARTY WHO HEREAFTER SERVES SUMMONS IN THIS ACTION UPON A NEW PARTY SHALL SERVE A COPY OF THIS NOTICE ON THE NEW PARTY ALONG WITH THE SUMMONS AND COMPLAINT OR CROSS-COMPLAINT.**

<u>NOTICE OF CASE ASSIGNMENT</u>

Pursuant to rule 3.734 of the California Rules of Court, this action is hereby assigned for limited purposes to the departments indicated below:

| PURPOSE | DEPARTMENT | COURT LOCATION |
|---|---|---|
| **LAW & MOTION** | 54 | Hall of Justice |
| **CASE MANAGEMENT PROGRAM** | 28 | Gordon D. Schaber Superior Court |

Please refer to Chapter Two – Parts 3 and 4 of the Sacramento Superior Court Local Rules and the Court's website for additional filing instructions and information about hearing reservations, tentative rulings, and requesting oral argument.

<u>NOTICE OF CASE MANAGEMENT CONFERENCE</u>

**Hearing Date**

The above entitled action has been set for a case management conference at **8:30 AM** on **January 30, 2026** in **Department 28** in accordance with California Rules of Court 3.722. You must be familiar with the case and fully prepared to participate effectively in the case management conference.

**Case Management Statement**

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

**Tentative Ruling / Confirming Appearance at the Hearing**
The Court will issue a tentative ruling not later than 2:00 p.m. of the court day before the hearing date which may be viewed by logging into the court's online public portal and accessing your case.

<u>Unless an appearance is ordered in the court's tentative ruling, parties do not need to appear at the hearing.</u> A party requesting appearance to contest a tentative ruling must advise the department clerk and the opposing party no later than 4:00 p.m. on the court day before the hearing.

**NOTICE OF CASE ASSIGNMENT<br>AND CASE MANAGEMENT CONFERENCE<br>(UNLIMITED CIVIL CASE)**

| SHORT TITLE: SCROGGINS vs KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD, P.C., | CASE NUMBER: 25CV013376 |
|---|---|

| | |
|---|---|
| **Remote Appearances** | Unless ordered to appear in person by the court, parties may appear remotely either telephonically or by video conference via the Zoom video/audio conference platform with notice to the court and all other parties in accordance with Code of Civil Procedure 367.75. If appearing remotely, parties are required to participate in their hearing using a device that has video and/or audio capability (i.e. computer, smartphone, or tablet). Although remote participation is not required, the court will presume all parties are appearing remotely for non-evidentiary civil hearings. |
| **Minimum Requirements** | Prior to the filing of the case management statement, the parties should have done the following:<br><br>• Served all parties named in the complaint within 60 days after the summons has been issued<br>• Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered |
| **Certification Filed in Lieu of Case Management Statement** | If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement. |
| **Case Management Orders** | At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date. |
| **Compliance** | Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money). |
| **Continuances** | Case management conference(s) will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference. |

Dated: 06/05/2025                    By:

*/s/ C. Raybould*
/s/ C. Raybould, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT**
**AND CASE MANAGEMENT CONFERENCE**
**(UNLIMITED CIVIL CASE)**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

### Gordon D. Schaber Superior Court, Department 31

## JUDICIAL OFFICER: HONORABLE STEVEN M. GEVERCER

Courtroom Clerk: L.Chen-Knapp                                    CSR: None

---

**25CV013376**                                                   June 16, 2025
                                                                      2:46 PM

**SCROGGINS**
  **vs**
**KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD, P.C.,**

---

**MINUTES**

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Complex Determination**

COMPLEX DETERMINATION

Having reviewed and considered the pleadings on file, the Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Sacramento County Local Rules concerning complex litigation.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten (10) calendar days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Payment may be submitted by mail or placed in one of the Civil Drop Boxes located in Room 102 of the Gordon D. Schaber Courthouse at 720 9th Street, Sacramento, CA 95814. Please make checks payable to the Clerk of the Superior Court.

Failure to pay the required fees shall have the same effect as the failure to pay a filing fee, and shall be subject to the same enforcement and penalties (Cal. Gov. Code § 70616(g)).

SERVICE OF THIS ORDER

The plaintiff is directed to serve all other parties with a copy of this order.

**This action involves or is likely to involve**: Claims involving class actions.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve.

Management of a large number of witnesses or a substantial amount of documentary evidence.

The case is ordered reassigned to Judge Jill H. Talley in Department 23 at the Gordon D. Schaber Superior Court for all further proceedings and for all purposes.

Any previously calendared hearings in departments other than the newly assigned courtroom are advanced to this date and vacated.

Certificate of Mailing is attached.

By:
/s/ L. Chen-Knapp
L. Chen-Knapp, Deputy Clerk

Minutes of: 06/16/2025
Entered on: 06/16/2025

---

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SACRAMENTO

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:
Gordon D. Schaber Superior Court
720 Ninth Street, Sacramento, CA 95814

PLAINTIFF/PETITIONER:
Rosanne Scroggins

DEFENDANT/RESPONDENT:
KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD, P.C.,

| CERTIFICATE OF MAILING | CASE NUMBER: 25CV013376 |
|---|---|

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Complex Determination) upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Sacramento, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

John Nelson
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
280 S. Beverly Drive
Beverly Hills, CA 90212

Dated: 06/17/2025          By:          /s/ L. Chen-Knapp
                                        L. Chen-Knapp, Deputy Clerk

**CERTIFICATE OF MAILING**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC<br>John J. Nelson SBN 317598<br>402 W Broadway, Suite 1760<br>San Diego, CA 92101<br>TELEPHONE NO: (858) 209-6941    FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: jnelson@milberg.com<br>ATTORNEY FOR *(Name)*: Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>06/20/2025<br>By: _____ S. Woltman _____ Deputy |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sacramento |
|---|
| STREET ADDRESS: 720 9th Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Sacramento, 95814-1302 |
| BRANCH NAME: Sacramento |

| PLAINTIFF / PETITIONER: ROSANNE SCROGGINS, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT: KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD, P.C. | 25CV013376 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>13501767 (25583236) |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [ ] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [X] Other *(specify documents)*:  Notice of Case Assignment and Case Management Conference
3. a. Party served *(specify name of party as shown on documents served)*:
      Kronick, Moskovitz, Tiedmann & Girard, P.C.
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      Eric Robinson - Person Authorized to Accept Service of Process
4. Address where the party was served:
   1331 Garden Hwy 2nd Floor, Sacramento, CA 95833
5. I served the party *(check proper box)*
   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:                    (2) at *(time)*:
   b. [X] **by substituted service.** On *(date)*: Fri, Jun 13 2025           at *(time)*: 11:53 AM        I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:
      Shawn Freeman , Executive Assistant
      (1) [X] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [X] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
         from *(city)*:                                 or [X] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**PROOF OF SERVICE OF SUMMONS**

| PLAINTIFF / PETITIONER:  ROSANNE SCROGGINS, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT:  KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD, P.C. | 25CV013376 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date)*:          (2)  from *(city)*:

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section)*:

    ☐  Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify)*:

  c. ☐ as occupant.

  d. ☒ On behalf of *(specify)*:    Kronick, Moskovitz, Tiedmann & Girard, P.C.

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| ☐ other: | |

7. **Person who served papers**

  a.  Name:             Sequoia Sims

  b.  Address:        1400 North McDowell Blvd Suite 300, Petaluma, CA  94954

  c.  Telephone number:    800-938-8815

  d.  **The fee** for service was:  $120.00

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☒  a registered California process server:

        (i)  ☐ owner  ☐ employee  ☒ independent contractor

        (ii)  Registration No:  2022-044

        (iii)  County:  Sacramento

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:  June 16, 2025

Sequoia Sims
_____

  (NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
1400 North McDowell Blvd Suite 300,
Petaluma, CA  94954
800-938-8815

_____
                                  (SIGNATURE)

MC-031

| PLAINTIFF / PETITIONER: | ROSANNE SCROGGINS, et al. | CASE NUMBER: |
|---|---|---|
| DEFENDANT / RESPONDENT: | KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD, P.C. | 25CV013376 |

## DECLARATION OF MAILING
(This form must be attached to another form or court paper before it can be filed in court.)

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 1400 North McDowell Blvd Suite 300, Petaluma, CA  94954.

On 6/13/2025, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made (if applicable), I mailed copies of the:

Complaint, Civil Case Cover Sheet, Summons, Notice of Case Assignment and Case Management Conference

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Petaluma, CA, addressed as follows:

Kronick, Moskovitz, Tiedmann & Girard, P.C.
Eric Robinson - Person Authorized to Accept Service of Process
1331 Garden Hwy, 2nd Floor
Sacramento, CA 95833.

**I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

Date:   6/13/2025

Eloi Garcia
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

☐ Attorney for     ☐ Plaintiff     ☐ Petitioner     ☐ Defendant
☐ Respondent     ☒ Other *(Specify):* InfoTrack US, Inc.